UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Brian S. Shevlin, Keith P. Shevlin, and Erin R. Taylor, on behalf of themselves and those similarly situated,

Plaintiffs,

- against –

Phoenix Life Insurance Company and Phoenix Companies, Inc.,

Defendants.

**FEDERAL COURT DOCKET NO. ____________**

**STATE COURT DOCKET NO. MER L-002792 09**

**NOTICE <u>OF REMOVAL</u>**

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332(d), 1441 and 1446, defendants Phoenix Life Insurance Company ("PLIC") and Phoenix Companies, Inc. ("Phoenix") hereby remove this action from the Superior Court of New Jersey, Mercer County, to the United States District Court for the District of New Jersey. In support of this notice, Phoenix states:

1. On or about October 30, 2009, Plaintiffs commenced this action by filing a complaint captioned *Brian S. Shevlin, Keith P. Shevlin, and Erin Taylor, on behalf of themselves and those similarly situated v. The Phoenix Life Insurance Company and Phoenix Companies, Inc.* in the Superior Court of New Jersey, Mercer County (the "Complaint"), Docket No. MER L-002792 09. A copy of the Complaint and attached exhibits are attached hereto as Exhibit A. Upon information and belief, no other pleadings or other proceedings have been filed or taken to date.

2. Phoenix Companies, Inc. was served with a partial copy of the Complaint on November 24, 2009 (several pages were missing). PLIC was notified that a partial copy of the Complaint

was served on the New Jersey Insurance Commissioner on November 24, 2009. This Notice of Removal is timely under 28 U.S.C. § 1446(b), as it is filed within thirty days after the receipt by defendant, through service or otherwise, of a copy of the initial pleading (albeit incomplete) setting forth the claim for relief upon which such action or proceeding is based. 28 U.S.C. § 1446(b).

**This Court's Original Jurisdiction Pursuant to 28 U.S.C. § 1332(d)**

3. This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005) ("CAFA"), codified at 28 U.S.C. § 1332(d)(2) because it is a civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant.

4. Plaintiffs have alleged five causes of action against Defendants: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing "implied in the life insurance contracts;" (3) negligence; (4) violation of the New York Consumer Protection Law; and (5) unjust enrichment. *See* Complaint Counts I – V. Counts I-III are against Phoenix Life Insurance Company alone. Counts IV-V are against Phoenix Life Insurance Company and Phoenix Companies, Inc. *Id.*

5. The amount in controversy in the Complaint exceeds $5,000,000. The allegations in the Complaint include claims that Phoenix Life Insurance Company made prohibited reductions to the dividend scales of the "Closed Block" [1] in each of the years from 2006 to 2009, and wrongfully used those deductions to increase the dividend paid to its parent corporation, Phoenix

[1] Plaintiffs define "Closed Block" as "the accounting mechanism to ensure that the reasonable dividend expectations of policyholders who own Policies that are part of the Closed Block Business are met." Compl. ¶ 22 (citing the Plan of Reorganization adopted by the Board of Directors of Phoenix Home Life Mutual Insurance Company on December 18, 2000).

Companies, Inc. Compl., Count I ¶¶ 2-4, Count II ¶¶ 4-8. The Complaint alleges reductions of, among others, $58.4 million in 2006, and $33 million in 2009, respectively. Compl. ¶¶ 107, 117. The alleged amount in controversy, therefore, exceeds $5,000,000.

6. The Complaint in this action has been brought as a "class action" as defined in 28 U.S.C. § 1332(d)(1)(B) on behalf a proposed class of individuals and entities who are residents or domiciliaries of the United States of America; who were eligible to receive or be credited with policyholder dividends by Phoenix Life Insurance Company, and whose policies were assigned to the Closed Block. Compl. ¶ 128.

7. Upon information and belief, at the time this action was commenced, Plaintiffs were, and currently are, citizens and residents of the State of New Jersey. Compl. ¶¶ 1-3.

8. At the time this action was commenced, PLIC and Phoenix were, and are, corporations established by and existing under the laws of the State of Delaware. The principal executive office of both entities is located in Hartford, Connecticut.

**Removal Pursuant to 28 U.S.C. 1441**

9. A federal district court has jurisdiction over this action under CAFA because the matter in controversy, aggregating together all of the claims of the individual class members, exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which at lease one member of the plaintiff class is a citizen of a state different from that of at least one of the defendants. 28 U.S.C. § 1332(d)(2)-(d)(6).

10. This is a "class action" because it is a civil action filed under a State statute or rule of judicial procedure, N.J. Rules of Court 4:32, authorizing an action to be brought by one or more representative persons as a class action. 28 U.S.C. § 1332(d)(1)(B).

11. PLIC and Phoenix are organized and exist under the laws of the State of Delaware, with their principal executive offices located in Hartford, Connecticut. Plaintiffs allege that they are residents of New Jersey.

12. Because Plaintiffs have brought this case as a purported class action, see 28 U.S.C. § 1332(d)(8), because diversity exists between the Defendants and at least one member of the class, and because the CAFA jurisdictional minimum is met, the state court action may be removed to this Court under the CAFA removal provisions. See 28 U.S.C. § 1453(b). No exception to removal under CAFA applies. 28 U.S.C. § 1453(d).

13. Defendants hereby appear solely for the purpose of removal and for no other purpose and reserve all defenses available to them.

Dated: December 14, 2009

Podvey, Meanor, Catenacci, Hildner, Cocoziello & Chattman, A Professional Corporation
The Legal Center
One Riverfront Plaza, 8th Floor
Newark, New Jersey 07102

By: /s/ *Sheldon M. Finkelstein*
Sheldon M. Finkelstein

Debevoise & Plimpton, LLP
919 Third Avenue
New York, New York 10022

*Co-Counsel for Defendants Phoenix Life Insurance Company and Phoenix Companies, Inc.*

#274329

23096408V2

Case 3:09-cv-06332-AET-TJB Document 23-1 Filed 12/14/09 Page 5 of 47

# EXHIBIT A

Appendix XII-B1

# CIVIL CASE INFORMATION STATEMENT
(CIS)

Use for Initial Law Division
Civil Part pleadings (not motions) under Rule 4:5-1.
**Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.**

COPY

**FOR USE BY CLERK'S OFFICE ONLY**
PAYMENT TYPE: CK CG CA
CHG/CK NO.
AMOUNT: NOV 04 2009
OVERPAYMENT:
BATCH NUMBER:

| | | |
|---|---|---|
| ATTORNEY/PRO SE NAME: **Arnold C. Lakind, Esq.** | TELEPHONE NUMBER: **( 609 ) 275-0400** | COUNTY OF VENUE: **Mercer County** |
| FIRM NAME (if applicable): **Szaferman, Lakind, Blumstein & Blader, P.C.** | | DOCKET NUMBER (when available): **MER-L- 2792-09** |
| OFFICE ADDRESS: **101 Grovers Mill Rd., Suite 200, Lawrenceville, New Jersey 08648** | | DOCUMENT TYPE: **Complaint** |
| | | JURY DEMAND: [X] YES [ ] NO |

| | |
|---|---|
| NAME OF PARTY (e.g., John Doe, Plaintiff): **Brian S. Shevlin, Keith P. Shevlin and Erin R. Taylor, on behalf of themselves and those similarly situated** | CAPTION: **The Phoenix Life Insurance Company and Phoenix Companies, Inc.** |
| CASE TYPE NUMBER (See reverse side for listing): **514** | IS THIS A PROFESSIONAL MALPRACTICE CASE? [ ] YES [X] NO<br>IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| RELATED CASES PENDING? [ ] YES [X] NO | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? [ ] YES [X] NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN [ ] NONE [X] UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| | | |
|---|---|---|
| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? [X] YES [ ] NO | IF YES, IS THAT RELATIONSHIP | [ ] EMPLOYER-EMPLOYEE [ ] FRIEND/NEIGHBOR [ ] OTHER (explain)<br>[ ] FAMILIAL [X] BUSINESS |
| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? | [ ] YES [X] NO | |

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

| | | |
|---|---|---|
| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? | [ ] YES [X] NO | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION: |
| WILL AN INTERPRETER BE NEEDED? | [ ] YES [X] NO | IF YES, FOR WHAT LANGUAGE: |

ATTORNEY SIGNATURE: [signature] Arnold C. Lakind, Esq.

30 - Civil Case Information Statement (CIS)
Appendix XII-B1, CN 10517
Rev. 3/09 P4/09

Powered by HotDocs®

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com 800.222.0510 Page 1

Szaferman, Lakind,
Blumstein & Blader, P.C.
101 Grovers Mill Road, Ste. 200
Lawrenceville, New Jersey 08648
Telephone (609) 275-0400
Facsimile (609) 275-0400
Attorneys for Plaintiff(s)

Levy, Phillips & Konigsberg, LLP
101 Grovers Mill Road, Ste. 200
Lawrenceville, New Jersey 08648
Telephone (609) 720-0400
Facsimile (609) 720-0457

Attorneys for Plaintiff(s)

| Brian S. Shevlin, Keith P. Shevlin, and Erin R. Taylor, on behalf of themselves and those similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>The Phoenix Life Insurance Company and Phoenix Companies, Inc.<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>Law Division - Mercer County<br><br>Docket No. MER-L-2792-09<br><br>**COMPLAINT**<br>**(Class Action)**<br><br>**JURY DEMAND** |
|---|---|

Plaintiffs, Brian S. Shevlin, Keith P. Shevlin and Erin R. Taylor, on behalf of themselves and those similarly situated, by way of Complaint against the Defendants, The Phoenix Life Insurance Company ("PLIC") and Phoenix Companies, Inc., say that:

**A. THE PARTIES**

1. Plaintiff, Brian S. Shevlin, resides within the Borough of Pennington, County of Mercer, State of New Jersey and is the

owner of and an insured on a policy of life insurance of the Defendant, The Phoenix Life Insurance Company.

2.  Plaintiff, Keith P. Shevlin, resides within the State of New Jersey and was the insured on a policy of life insurance of the Defendant, The Phoenix Life Insurance Company, during the relevant period.

3.  Plaintiff, Erin R. Taylor, resides within the State of New Jersey and was the owner of and an insured on a policy of life insurance of the Defendant, The Phoenix Life Insurance Company, during the relevant period.

4.  Defendant, The Phoenix Life Insurance Company, is currently engaged in the business of providing life insurance and other insurance products.

5.  Phoenix Mutual Life Insurance Company ("PMLI"), was originally organized in Connecticut, in 1851, as a stock company under the name American Temperance Life Insurance Company.

6.  In 1889, PMLI reorganized as a mutual life insurance company.

7.  Home Life Insurance Company ("Home"), was founded in 1860, as a stock insurance company.

8.  In or about 1916, Defendant, Home, repurchased its outstanding stock and became a mutual insurance company.

9. In or about 1992, PMLI and Home merged and called the new company Phoenix Home Life Mutual Insurance Company ("Phoenix Mutual"). In connection with that merger, the Company moved its domicile to New York.

10. In or about June 2001, Defendant, Phoenix Mutual, reorganized from a mutual life insurance company to a stock life insurance company, became a wholly owned subsidiary of The Phoenix Companies, Inc., and changed its name to The Phoenix Life Insurance Company.

11. PLIC is the successor company of Phoenix Mutual, Home and PMLI and all of the companies issued life insurance policies and are or were during the relevant period of time engaged in business in the State of New Jersey.

12. The Phoenix Companies, Inc., ("Parent"), is the parent corporation of The Phoenix Life Insurance Company.

13. The Phoenix Companies, Inc., is PLIC's sole shareholder.

14. The Phoenix Companies, Inc., is located at One American Row, Hartford, Connecticut 06102-5056.

B. **THE INSURANCE POLICIES**

15. In accordance with the terms of life insurance contracts between PLIC and Plaintiffs, as well as those similarly situated, the policyholder is the owner of his/her respective

policy of life insurance during its duration, and as the owner, is entitled to exercise ownership rights, which include the right to receive dividends apportioned to the policy.

16. In the aggregate, policyholders are the owners of any surplus remaining at the end of each year.

17. PLIC credits dividends to policies in effect in the amount it apportions at the end of every year, in accordance with those policies.

18. PLIC is obligated to determine and apportion dividends fairly and equitably among all policyholders.

**C. THE DEMUTUALIZATION OF PHOENIX HOME LIFE MUTUAL INSURANCE COMPANY**

19. On December 18, 2000, (hereafter "the Board Adoption Date"), the Board of Directors of Phoenix Mutual adopted a Plan of Reorganization, ("Plan of Reorganization") which it subsequently amended on December 28, 2000, and again on January 26, 2001.

20. The proposed Plan of Reorganization anticipated that Phoenix Mutual would create a new holding company, The Phoenix Companies, Inc., which would own all of the common stock of Phoenix Mutual. Phoenix Mutual would be concurrently converted to a stock company and renamed Phoenix Life Insurance Company.

21. In exchange for the loss of their membership interests in Phoenix Mutual, policyholders were to be compensated with

shares of common stock, cash and/or enhanced values credited to their policies of life insurance.

22. The Plan of Reorganization proposed by Phoenix Mutual anticipated the creation of a "Closed Block," defined as "the accounting mechanism to ensure that the reasonable dividend expectations of policyholders who own Policies that are part of the Closed Block Business are met."

23. The Plan of Reorganization provided, under Article 3.1, that

> the Closed Block Business shall consist primarily of participating business and shall be operated by the Company as a closed block, which closed block, insofar as policyholder dividend purposes are concerned, shall be operated by the Company for the exclusive benefit of the Policies included therein[.]

24. The Plan of Reorganization also provided, under Article 3.1, that "all Participating Policies will continue to be Participating Policies in accordance with their terms[.]"

25. As part of the re-organization from a mutual life insurance company to a holding company, policyholders of the PLIC, including Plaintiffs, received, on or about February 17, 2001, various documents. Among those documents received by the policyholders and Plaintiffs was a two part Information Booklet, attached respectively to this Complaint as Exhibits A and B (hereafter "Information Booklet").

26. As provided in the Information Booklet, the board of directors of Phoenix Mutual had the responsibility to set the dividends on the Plaintiffs' policies and was to continue to set dividends on the Closed Block policies annually. Exhibit A at p. 65.

27. During the demutualization process, Defendants stated to Plaintiffs and those similarly situated, that they

> will allocate assets to the Closed Block in an amount that produces cash flows which, together with anticipated revenues from the Closed Block policies, are reasonably expected to be sufficient to support obligations and liabilities relating to these policies, including, but not limited to, provisions for the payment of claims and certain expenses and taxes, and for continuation of policyholder dividend scales in effect for 2000, if the experience underlying such scales continues, and for appropriate adjustments in such scales if experience changes.

[*See* Exhibit B at p. 75.]

28. Defendants assured Plaintiffs and those similarly situated, that,

> [t]he objective of the Closed Block is to provide reasonable assurances to owners of policies therein that, after the Plan Effective Date, assets will be available to maintain the dividend scales in effect for 2000 if the experience underlying such scales continues and to implement appropriate adjustments in future dividend scales if such experience changes.

[*See* Closed Block Memorandum, attached hereto as Exhibit D at p.2.]

29. In the Information Booklets, Defendants further promised Plaintiffs and those similarly situated that:

a. The investment activities of the Closed Block would be conducted in accordance with the investment guidelines filed with and approved by the New York Superintendent as required by the Closed Block Investment Guidelines. Exhibit A, p.32.

b. Policyholder dividends would be set in such a manner as to prevent a windfall for the last surviving Closed Block policies as required by the Closed Block Dividend Policy. Exhibit A, p.32.

c. Dividends would be set in such a manner as to be fair and equitable to all classes of policyholders within the Closed Block as required by the Closed Block Dividend Policy. Exhibit A, p.32.

d. Dividends would be set in such a manner as to have no assets left in the Closed Block when the final payment is made to the last policyholder as required by the Closed Block Dividend Policy. Exhibit A, p.33.

e. The Closed Block would be managed so that a majority of the fixed income portfolio was investment grade, based on ratings of Moody's Investment Services or comparable

ratings as required by Article 8.2 of the Plan of Reorganization of Phoenix Home Life Mutual Insurance Company. Exhibit A, p.63.

f.    The Closed Block assets would be "managed in the aggregate to seek a high level of return consistent with the preservation of principal and equity" and as required by Article 8.2 of the Plan of Reorganization of Phoenix Home Life Mutual Insurance Company. Exhibit A, p.63.

g.    The Closed Block Assets would "be managed in good faith and with that degree of care that an ordinarily prudent individual or entity in a like position would use under similar circumstances" as required by Article 8.2 of the Plan of Reorganization of Phoenix Home Life Mutual Insurance Company. Exhibit A, p.64.

h.    The Closed Block dividends would be apportioned in accordance with applicable law as required by Article 8.2 of the Plan of Reorganization of Phoenix Home Life Mutual Insurance Company. Exhibit A, p.65.

i.    The Closed Block dividend payments would be determined in a manner consistent with the contribution principle for dividend determination and consistent with ASOP-15, "Dividend Determination for Participating Individual Life Insurance Policies and Annuity Contracts" as set forth on page A-12 of the

Statement of Actuarial Opinion provided by Tillinghast-Towers Perin. Exhibit B, p. A-12.

     j.   Cash flows in excess of amounts assumed for the Closed Block would be available for distribution over time to Closed Block policyholders and would not be available to stockholders of PLIC. Exhibit B, p.75.

     k.   "None of the assets, including the revenue therefrom, allocated to the Closed Block or acquired by the Closed Block [were to] revert to the benefit of the stockholders of [PLIC]." Exhibit A, p.65.

    30.  During the demutualization process, Phoenix Mutual made representations to policyholders that were consistent with the law governing operation of a closed block, which law provides that "none of the [closed block] assets, including the revenue therefrom . . . shall revert to the benefit of the stockholders of the reorganized insurer." NY Insurance Law §7312(d)(5).

    31.  Defendants, PLIC and Phoenix Companies, Inc., sought to gain the affirmative vote of the policyholders and Plaintiffs for the Defendants' reorganization by making the foregoing representations prior to their vote on the demutualization of Phoenix Mutual.

    32.  The promises to perform as represented by Defendants in the Information Booklets and other demutualization documents

constitute a contract with the Plaintiffs and those similarly situated.

33. The performance promised by Defendants in the demutualization documents was concomitant with that required by the laws of the State of New York.

34. On or about June 1, 2001, the State of New York Insurance Department approved the Plan of Reorganization and issued its "Opinion and Decision In the Matter of the Plan of Reorganization of Phoenix Home Life Mutual Insurance Company from a Mutual Life Insurance Company into a Stock Life Insurance Company" (hereafter "Opinion and Decision"), attached as Exhibit C.

35. The Opinion and Decision consists of twelve sections, including a section entitled "Major Features of the Plan of Reorganization." See Exhibit C.

36. Section L of the Major Features of the Plan of Reorganization is entitled "The Closed Block" and contains six sections: General, Establishment of the Closed Block, Operation of the Closed Block, Policy Benefits and Dividends, Other Participating Policies, and Actuarial Opinions. See Exhibit C.

37. The section entitled "General" in Section IV(L) of the Opinion and Decision recites that Section 7312(d) of the New York Insurance Laws permits a domestic life insurance company

converting from mutual to stock ownership to operate its participating policies as a "Closed Block" for the "exclusive benefit of those policies and contracts and for dividend purposes only." *See* Exhibit C, p.51.

38. Based upon Defendants' representations to the New York State Department of Insurance, the New York Insurance Superintendent, in approving the reorganization states that, "Phoenix will establish the Closed Block to ensure that the reasonable dividend expectations of policyholders who own policies included in the Closed Block will be met." See Exhibit C, p.52.

39. The New York Insurance Superintendent further stated in the June 2001 Opinion and Decision that, "[a]ssets of the Company totaling approximately $7 billion will be allocated to the Closed Block" and brought forward to the Plan of Reorganization Effective Date. See Exhibit C, p.52.

40. Subsequently, Plaintiffs' and policyholders' expectations about the size of their dividends, based upon representations by Defendants in the Information Booklets and to the New York State Department of Insurance were not met, and, in fact, the dividend aspect of Plaintiffs' and other policyholders' policies have lost significant value.

41. Plaintiffs and the classes have suffered economic and other losses as a result of Defendants' failure to perform their promises, negligence, breaches and other acts and omissions.

**D. PAYMENTS OF POLICYHOLDER DIVIDENDS TO PLAINTIFFS**

***Insurance on the Life of Brian S. Shevlin***

42. On or about June 24, 1991, Plaintiff, Brian S. Shevlin became the insured pursuant to a participating whole life insurance policy (Number 1185866) issued by the Home Life Insurance Company in the face amount of $100,000.

43. Brian S. Shevlin is the owner of this policy, and as the owner, he is entitled to "exercise ownership rights which include the right to...receive dividends apportioned to this policy[.]"

44. Brian S. Shevlin's Home Life Insurance Policy provided for dividends to be paid to participating policy-holders, stating, "while this policy is in effect . . . we will credit such dividends as we may apportion to it each year."

45. Policyholders, including Brian S. Shevlin, had the right to elect under the Home Life Insurance Policy to apply the dividends under one of four options.

46. Brian S. Shevlin elected to use his dividends to buy paid-up additions, which the Home Life Insurance Policy defined

as "[t]o purchase a participating paid-up level whole life addition."

47.   In 1991, when purchasing the Home Life Insurance Policy for his son Brian S. Shevlin, Kenneth B. Shevlin, was given a document entitled "Illustration of Policy Values" for a multi-year period.

48.   The Home Life Insurance Policy "Illustration of Policy Values," issued in 1991, shows increasing annual dividends, to a point that net premium payments are shown as reduced to zero.

49.   The net premium payment equals a) the annual premium, b) less the dividend if it reduces the premium, c) less the increase in loan, d) plus the loan interest, and e) less the value of any dividend additions surrendered.

50.   Plaintiff, Brian S. Shevlin, became the owner of the life insurance policy issued on his life after he married in 1998.

51.   Between 1993 and 2006, the average annual policy dividend paid on Plaintiff Brian S. Shevlin's policy, and used to purchase paid-up whole life insurance, was approximately $40.

52.   In or about June 2007, PLIC informed Plaintiff, Brian S. Shevlin, that his 2007 annual policy dividend would be $2.59.

53.   In or about June 2008, PLIC informed Plaintiff, Brian S. Shevlin, that his 2008 annual policy dividend would be $2.87.

54. In or about June 2009, PLIC informed Plaintiff, Brian S. Shevlin, that his 2009 annual policy dividend would be $0.

55. On or about February 27, 2008, Defendants provided Plaintiff, Brian S. Shevlin, with a report which estimated that the policy dividend to be paid to Plaintiff, Brian S. Shevlin, for each of the years 2007 to 2010 will be $3.00 per year and, for 2011 will be $4.00.

***Insurance on the Life of Keith P. Shevlin***

56. On or about July 10, 1991, Kenneth B. Shevlin, the father of Plaintiff, Keith P. Shevlin, purchased a participating whole life insurance policy (Number 1185865) issued by the Home Life Insurance Company in the face amount of $100,000 for his son, Keith P. Shevlin.

57. Keith P. Shevlin was the owner of this policy during its relevant duration, and as the owner, he was entitled to "exercise ownership rights which include the right to . . . receive dividends apportioned to this policy[.]"

58. The Home Life Insurance Policy for Keith P. Shevlin provided for dividends to be paid to participating policy-holders, stating, "while this policy is in effect, . . . we will credit such dividends as we may apportion to it each year."

59. Policyholders, including Keith P. Shevlin, had the right to elect under the Home Life Insurance Policy to apply the dividends under one of four options.

60. Kenneth B. Shevlin elected to use the dividends to buy paid-up additions for his son, Keith P. Shevlin, which paid up additions the Home Life Insurance Policy defined as "[t]o purchase a participating paid-up level whole life addition."

61. In 1991, when purchasing the Home Life Insurance Policy for Keith P. Shevlin, Kenneth B. Shevlin was given a document entitled "Illustration of Policy Values" for a multi-year period.

62. The Home Life Insurance Policy "Illustration of Policy Values," issued in 1991, shows increasing annual dividends, to a point that net premium payments are shown as reduced to zero, beginning in year 15 of the policy, and afterward.

63. In 1998, Phoenix Home Life Mutual Insurance Company informed Kenneth B. Shevlin that dividends are expected to pay future premiums in year 21 (2012) of the policy on Keith P. Shevlin.

64. On or about October 23, 2000, PLIC provided Kenneth B. Shevlin, with a report which estimated that the policy dividend to be paid on the policy insuring Keith P. Shevlin and used to purchase paid up additional insurance. The report estimated that, based on the current interest sensitive dividend scale, dividends

would be $62 in 2007, $67 in 2008, $72 in 2009, $78 in 2010 and $85 in 2011, and greater thereafter.

65. Between 1993 and 2006, the average annual policy dividend paid on Keith P. Shevlin's policy, and used to purchase paid-up whole life insurance, was approximately $40.

66. In or about July 2007, PLIC informed Kenneth B. Shevlin that the 2007 dividend on the policy for Keith P. Shevlin would be $2.10.

67. In or about July 2008, PLIC informed Kenneth B. Shevlin that the 2008 dividend on the policy for Keith P. Shevlin would be $2.29.

68. In or about February 2008, PLIC provided Kenneth B. Shevlin with a report entitled "Ledger Dividend Method: Dividends Buy Paid Up Additions" which stated that the policy dividends to be paid on the policy insuring Keith P. Shevlin would be $2.00 in 2008, $3.00 in 2009 through 2011, $62.00 in 2012, and $78.00 in 2013.

*Insurance on the Life of Erin R. Taylor*

69. On or about July 10, 1991, Plaintiff, Kenneth B. Shevlin, purchased a participating whole life insurance policy (Number 1185862) issued by the Home Life Insurance Company in the face amount of $100,000 for his daughter, Erin R. Shevlin (now Erin R. Taylor).

70.   In 2000, Erin R. Taylor became the owner of this policy and, as the owner, she was entitled to "exercise ownership rights which include the right to . . . receive dividends apportioned to this policy[.]"

71.   The Home Life Insurance Policy for Erin R. Taylor provided for dividends to be paid to participating policyholders, stating, "while this policy is in effect . . . we will credit such dividends as we may apportion to it each year."

72.   Policyholders have the right to elect under the Home Life Insurance Policy to apply the dividend under one of four options.

73.   Kenneth B. Shevlin elected to use the dividends to buy paid-up additions for Erin R. Taylor, which the Home Life Insurance Policy defined as "[t]o purchase a participating paid-up level whole life addition."

74.   In 1991, when Kenneth B. Shevlin purchased the Home Life Insurance Policy for his daughter Erin R. Taylor, he was given a document entitled "Illustration of Policy Values" for a multi-year period.

75.   The Home Life Insurance Company 1991 "Illustration of Policy Values," issued in 1991, shows increasing annual dividends, culminating at a point that net premium payments are

shown as reduced to zero, in year 16 of the policy, and afterward.

76. In 2003, PLIC sent Kenneth B. Shevlin a report showing net premium payment on the policy of Erin R. Taylor to be zero in year 2015.

77. After she married in 2000, Erin R. Taylor became the owner of her life insurance policy.

78. Between 1993 and 2006, the average policy dividend paid on Plaintiff Erin R. Taylor's policy, and used to purchase paid-up whole life insurance, was approximately $40.

79. On or about September 4, 2003, Defendants provided Plaintiff, Erin R. Taylor, with a report which showed that the policy dividend to be paid to Plaintiff, Erin R. Taylor, would be $54 in 2007, $58 in 2008, $63 in 2009, $67 in 2010, and $72 in 2011.

80. In or about July 2007, PLIC informed Plaintiff, Erin R. Taylor, that her 2007 policy dividend would be $1.64.

81. In or about July 2008, PLIC informed Plaintiff, Erin R. Taylor, that her 2008 policy dividend would be $1.81.

82. In or about July 2009, PLIC informed Plaintiff, Erin R. Taylor, that her 2009 policy dividend would be $0.

83. On or about March 10, 2008, Defendants provided Plaintiff, Erin R. Taylor, with a report which estimated that the

policy dividend to be paid to Plaintiff, Erin R. Taylor, for each of the years 2007 to 2011 will be $2.00 per year.

**E. ADJUSTMENT OF DIVIDEND SCALE IN YEARS 2006 AND 2009**

84. Section 4207(a) of the New York Insurance Law provides that "any domestic stock life insurance company may distribute a dividend to its shareholders where the aggregate amount of such dividends in any calendar year does not exceed the lesser of:

  (A)  ten percent of its surplus to policyholders as of the immediately preceding calendar year; or

  (B)  its net gain from operations for the immediately preceding calendar year, not including realized capital gains.

85. Attached to this Complaint as Exhibit F(1 to 5) are certain financial data excerpted from PLIC's annual statement filed with the National Association of Insurance Commissioners ("NAIC") from 2004 through 2008, respectively.

86. In 2003, 2004 and 2005, PLIC distributed stockholder dividends based on its net gains from operations for the immediately preceding calendar year. See Exhibit F(1 to 3).

87. The net gains from operations excluding realized capital gains for the years 2003, 2004 and 2005, were less than ten percent of the surplus to policyholders during the same years. See Exhibit F(1 to 3).

88. On November 3, 2005, The Phoenix Companies, Inc., issued a press release announcing that The PLIC Board of

Directors "voted to adjust the Closed Block dividend scale for 2006." The annual press releases issued from 2005 through 2009 by Phoenix Companies, Inc., regarding the decision of PLIC to maintain or alter the dividend scale for the coming year are attached to this Complaint as Exhibit E(1 to 5, respectively).

89. The press release explained that "[t]he board of directors is required to review the dividend scale annually to ensure an adequate level of assets in the closed block as well as fair and equitable dividend payments among all classes of participating policy holders." See Exhibit E(1), 2005 Press Release.

90. The 2005 press release further stated that "Phoenix's closed block has benefitted from favorable mortality experience and strong persistency, which has offset the impact of a prolonged low interest rate environment." See Exhibit E(1).

91. The press release stated that the "adjustment - the first since 1999 - will result in a dividend reduction for most of the life insurance policies in [the closed] block." See Exhibit E(1).

92. In 2003, 2004 and 2005,PLIC policyholders received, in the aggregate, dividends of $396.0, $395.9 and $398.1 million, respectively. See Exhibit F(1 to 3) at p.5, line 8.

93.   The 2006 adjustment in the dividend scale resulted in a $58.4 million reduction in the dividends PLIC paid to policyholders that year, as discussed by PLIC in its annual statement filed with the NAIC for 2005.   See selected excerpts from PLIC's annual statement filed with the NAIC from 2004 through 2008, attached to this Complaint as Exhibit G(1 to 5), respectively.

94.   PLIC maintained the 2006 dividend scale for Closed Block policyholders in 2007 and 2008. See Exhibit E(3 to 4)

95.   As a result, the yearly dividend PLIC paid to Closed Block policyholders from 2006 to 2008, inclusive, was on average, $55 million less than the yearly dividend Closed Block policyholders received in 2003, 2004 and 2005.  See Exhibit F.

96.   During the demutualization, the Policyholder Information Booklet stated, consistent with New York Law, that the Closed Block's assets would remain in the Closed Block, and could "never revert to the benefit of stockholders."  Exhibit A, p. 31.

97.   PLIC's 2005 Annual Statement, among others, to the National Association of Insurance Commissioners acknowledged that "[a]ny cash flows in excess of amounts assumed will be available for distribution over time to closed block policyholders and will not be available to stockholders." Exhibit G(2), p. 19.12.

98. However, after reducing by $58.4 million its policyholder dividend liability for the Closed Block in 2006, PLIC recognized this same amount as part of its "Statutory Gain from Operations before Taxes" for 2005. See Exhibit G(2).

99. After taxes are deducted from the Statutory Gain from Operations before Taxes, the remaining operational gain is found in the yearly report to the NAIC under Summary of Operations, denominated "Net gain from operations after dividends to policyholders and federal income taxes and before realized capital gains or (losses)." See Exhibit F, p.4 at Line 33. This is the same figure referenced under New York State Insurance Law §4207(a)(1)(B) as "net gain from operations...not including realized capital gains."

100. By increasing its "statutory" gain, PLIC in turn, increased its "net gain from operations...not including realized capital gains," which, pursuant to New York State Insurance Law §4207(a)(1), is used to determine the amount of dividends that may be distributed to shareholders.

101. PLIC reported in its 2006 Annual Statement to the NAIC that:

> On November 3, 2005, the 2006 policyholder dividend scale was reduced for most policyholders with a reduction in the interest component of the scale, partially offset by improvements in the mortality component. The decrease in dividend liability

Case 08-33321 M00001B Document 2351 Filed 12/14/09 Page 29 of 47

> was $58.4 million. This decrease resulted in a increase of the same amount in the Statutory Gain From Operations before Taxes for 2005. This is the first such decrease since 1999.

[See Exhibit F(3), p. 19.13].

102. The maximum aggregate dividend PLIC could lawfully distribute to its shareholders is the lesser of a) ten percent of its policyholder surplus for the preceding year, or b) its net gain from operations for the preceding year, not including realized capital gains.

103. In 2003, 2004 and 2005, PLIC paid stockholder dividends in an amount equal to the net gain from operations for the preceding year not including realized capital gains. PLIC's net gain from operations for the preceding year not including realized capital gains was less than ten percent of the policyholder surplus for that same year. See Exhibit F(1 to 2).

104. In 2006, 2007 and 2008, PLIC paid stockholder dividends in an amount equal to ten percent of policyholder surplus for the preceding year. This amount was less than net gain from operations for the preceding year (including realized capital gains). See Exhibit F(3 to 5).

105. PLIC's 2005 surplus was $875.5 million; ten percent of that figure is $87.5 million. See Exhibit F(3), p.3, line 37 and p.4, line 52.

106. PLIC's 2005 net gain from operations (not including realized capital gains) was $106.2 million. See Exhibit F(3), p.4, line 33.

107. Included in this $106.2 million was the $58.4 million (less federal income taxes on $58.4 million) reduction in dividend liability for Closed Block policyholders in 2006.

108. In adjusting the 2006 dividend scale, and thereby decreasing the dividends PLIC paid to Closed Block policyholders by $58.4 million, PLIC was able to increase the dividend to its sole stockholder, Phoenix Companies, Inc.

109. The dividend PLIC paid to its sole stockholder, Phoenix Companies, Inc., increased by $52.3 million from 2005 to 2006.

110. In 2007 and 2008, PLIC maintained the 2006 dividend scale and continued to pay Closed Block policyholders reduced dividends. See Exhibit E(2 and 3).

111. In 2007 and 2008, PLIC again distributed stockholder dividends from the policyholder surplus, as the net gains from operations exceeded ten percent of the policyholder surplus. See Exhibit F(4 and 5).

112. In 2007, PLIC paid Phoenix Companies, Inc., a stockholder dividend of $92.2 million. See Exhibit F(4), p.4, line 52.

113. In 2008, PLIC paid Phoenix Companies, Inc., a stockholder dividend of $83.3 million. See Exhibit F(5), p.4, line 52

114. In a November 2008 press release, Phoenix Companies, Inc., again announced that PLIC would adjust the dividend scale for policyholders in 2009. See Exhibit E(4).

115. The press release provided the following comment from Dona D. Young, chairman, president and chief executive officer of The Phoenix Companies, Inc:

> Overall, Phoenix's closed block has benefitted from favorable mortality experience and strong persistency, which has partially offset the impact of a prolonged low interest rate environment. This is only the second time we have had to adjust the dividend scale since we demutualized, which speaks to the underlying strength of the business. It is important to note that only the interest component will be reduced - other components such as mortality and expense remain unchanged[.]

116. In 2009, Brian Shevlin and Erin Taylor received $0 in dividends.

117. The 2009 dividend scale reduction in the interest component resulted in a further decrease of $33 million in PLIC's policyholder dividend liability. See Exhibit G(5).

118. PLIC recognized this additional $33.0 million as part of its "Statutory Gain from Operations before Taxes" for 2008. See Exhibit G(5).

119. In its 2008 Annual Statement to the NAIC, PLIC reported that:

> On November 4, 2008, the 2009 policyholder dividend scale was reduced for most policyholders with a reduction in the interest component of the scale. The decrease in dividend liability was $33.0 million. The decrease resulted in an increase of the same amount in the Statutory Gain from Operations before Taxes for 2008. This is the first such decrease since 2006.

[See Exhibit G(5)].

120. PLIC adjusted the 2006 and 2009 dividend scales to reduce its Closed Block policyholder dividend liability and increased the stockholder dividends paid to its Parent, and sole shareholder, at the expense of the Closed Block policyholders.

121. PLIC represented that Closed Block policyholders' dividends were reduced to "ensure an adequate level of assets in the closed block as well as fair and equitable dividend payments among all classes of participating policyholders. However, the total decrease in Closed Block dividend liability was recognized in the same amount, as a Statutory Gain from Operations by PLIC and comprised a substantial part of the "net gain from operations[] not including realized capital gains."

122. These gains flowed to the benefit of PLIC's sole shareholder, its parent company, The Phoenix Companies, Inc., from 2006 forward.

123. Contrary to its representations and promises, PLIC did not decrease dividends to Closed Block policyholders to ensure the long-term strength and solvency of the Closed Block.

124. PLIC's decision to reduce the dividends paid to Closed Block policyholders was directly contrary to the interests of Plaintiffs and similarly situated Closed Block policyholders.

125. None of the gain was retained by the Closed Block or reinvested in the form of Closed Block assets, paid as policyholder dividends, nor used in any other way to benefit Closed Block policyholders.

126. Defendant, The Phoenix Companies, Inc., and its shareholders, benefitted from PLIC's wrongful reduction of dividends payable to and owned by Closed Block policyholders under their life insurance contracts.

**F. THE CLASS**

127. Plaintiffs, Brian S. Shevlin, Keith P. Shevlin, and Erin R. Taylor, bring this action on behalf of themselves and as representatives of a class (the "Class") of PLIC policyholders.

128. The Class consists of individuals and entities (i) who reside or are domiciled within the United States of America; (ii) who, since January 1, 2006, were eligible to receive or to be credited with policyholder dividends by Phoenix; (iii) whose policies were assigned to the Closed Block, as defined above.

129. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice or judicial officer presiding over this matter and the members of their judicial staff.

130. The proposed Class is so numerous that individual joinder of all of its members is impracticable. The total number of Class members is at least 100,000. The Class members are dispersed throughout the United States.

131. There are questions of law and fact common to the Class, among them the following:

a. Did PLIC pay policyholder dividends in accordance with the terms of the policies of insurance comprising the Closed Block?

b. Do those provisions of the Information Booklet (Parts One and Two) issued by Phoenix Wealth Management, addressed to the payment of policyholder dividends, constitute a contract?

c. If so, was that contract breached?

d. Were the reasonable dividend expectations of Closed Block policyholders met?

e. Were policyholder dividends properly computed?

f. Were the investment activities of the Closed Block conducted in accordance with the investment guidelines filed with and approved by the New York Superintendent?

g. Was income diverted from the Closed Block policyholders in order to pay stockholder dividends?

h. Were dividends set in such a manner as to be fair and equitable to all classes of policyholders within the Closed Block?

i. Was the Closed Block managed so that a majority of the fixed income portfolio was investment grade based on ratings of Moody's Investment Services or comparable ratings?

j. Were the Closed Block assets managed in the aggregate to seek a high level of return consistent with the preservation of principal and equity?

k. Were the Closed Block assets managed in good faith and with that degree of care that an ordinarily prudent individual or entity in a like position would use under similar circumstances?

l. Was Defendant, PLIC, negligent in the management of investment assets in the Closed Block?

m. Were the Closed Block dividends apportioned in accordance with applicable laws?

n. Were the dividend payments determined in a manner that is consistent with the contribution principle for dividend

determinations and consistent with ASOP-15, "Dividend Determination for Participating Individual Life Insurance Policies and Annuity Contracts"?

o. Were policyholder dividend obligations determined in a manner consistent with Statement of Position No. 00-3 ("SOP 00-3")?

p. Were Closed Block policyholder dividends reduced for the benefit of stockholders of Phoenix's parent corporation, The Phoenix Companies, Inc.?

q. Did The Phoenix Companies, Inc.'s shareholders benefit from the reduction in dividends for Closed Block policyholders?

r. Have Defendants violated the New York Consumer Protection Law?

132. The claims and defenses of the representative parties are typical of the claims and defenses of the Class.

133. The representative parties will fairly and adequately protect the interests of the Class.

134. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the Defendant, PLIC.

135. The parties opposing the Class have acted on grounds generally applicable to the Class thereby making appropriate final injunctive relief or corresponding declaratory relief.

136. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

137. Since the damages suffered by each Class member may be relatively small, the expense and burden of individual litigation makes it impractical for class members to separately seek redress.

138. Plaintiffs and the members of the Class suffered, and will continue to suffer, harm as a result of Defendants' conduct.

139. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Class is impractical.

140. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.

141. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct.

142. The Class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class members' claims in a single forum.

143. The conduct of this action as a class action conserves the resources of the parties and of the judicial system, and protects the rights of the class members. Furthermore, for many, if not most, class members, a class action is the only feasible mechanism that allows them an opportunity for legal redress and justice.

**COUNT I**

**CLAIM FOR BREACH OF CONTRACT AGAINST PHOENIX LIFE INSURANCE COMPANY**

1. Plaintiffs incorporate, as if fully repeated herein, all of the preceding paragraphs of this Complaint.

2. Defendant, PLIC, failed to pay dividends on policies of life insurance owned by Plaintiffs and those similarly situated, in accordance with the terms of their policies.

3. Defendant, PLIC, failed to manage the Closed Block in the manner required under the policies of Plaintiff and those

similarly situated, required by the laws of the State of New York, and promised in the Information Booklet.

4. Defendant, PLIC, failed to determine and allocate dividends to Plaintiffs and those similarly situated in the manner required under the policies of Plaintiff and those similarly situated, required by the laws of the State of New York, and promised in the Information Booklet.

WHEREFORE, Plaintiffs and those similarly situated, demand judgment against Defendant, PLIC, for:

    a. Compensatory damages;

    b. Interest;

    c. Attorneys' fees and costs of suit; and

    d. Such other and further relief as the Court deems equitable, just or proper; and

Plaintiffs, and those similarly situated, demand judgment against Defendant, PLIC:

    a) Compelling PLIC to adopt investment policies consistent with the requirements set forth in the Information Booklets, required by the laws of the State of New York, and required under the policies; and

    b) Compelling PLIC to allocate dividends in a fair and equitable manner and in conformance with the requirements set

forth in the Information Booklets, required by the laws of the State of New York, and required under the policies.

**COUNT II**

**CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN THE LIFE INSURANCE CONTRACTS AGAINST PHOENIX LIFE INSURANCE COMPANY**

1. Plaintiffs incorporate, as if fully repeated herein, all of the preceding paragraphs of this Complaint.

2. Pursuant to the contracts for life insurance, Defendant, PLIC, owed a duty to Plaintiffs and other similarly situated policyholders to deal fairly and in good faith when setting, apportioning and paying policyholder dividends.

3. Under the insurance contracts, PLIC had discretion to credit dividends to each policy "as [PLIC] may apportion to it each year."

4. The "prolonged low interest rate environment" cited by Defendant, Phoenix Companies, Inc., as the "change in experience" warranting the 2006 and 2009 dividend scale adjustments does not support the amount by which PLIC reduced policyholder dividends.

5. Any disparity between the expected and actual yearly interest rates was not of sufficient magnitude to justify the amount by which PLIC actually reduced dividends paid to Plaintiffs and those similarly situated.

6. PLIC's reduction in dividend payments to Plaintiffs and those similarly situated was not intended "to ensure an adequate level of assets in the closed block[.]"

7. PLIC's reduction in dividend payments to Plaintiffs and those similarly situated did not result in "fair and equitable dividend payments among all classes of participating policyholders[,]" nor was it intended to accomplish such.

8. Since 2006, Defendant, PLIC, has recognized the decrease in closed block policyholder dividend liability as PLIC's operational gains, and has used these gains to pay its sole shareholder and Parent, The Phoenix Companies, Inc., dividends in an amount in excess of what it otherwise would have been able to pay based upon NYS Insurance Law §4207(a), had PLIC not recognized these gains at the expense of Closed Block policyholders.

9. Defendant, PLIC, abused its discretion to set dividends under the life insurance policies of Plaintiffs and those similarly situated by depriving policyholders of the reasonably expected dividends, for PLIC's own benefit and that of its Parent company.

10. Defendant, PLIC, has breached the duty of good faith and fair dealing implied in the insurance contracts of Plaintiffs and others similarly situated.

WHEREFORE, Plaintiffs and those similarly situated, demand judgment against Defendant, PLIC, for:

a. Compensatory damages;

b. Interest;

c. Attorneys' fees and costs of suit; and

d. Such other and further relief as the Court deems equitable, just or proper.

Plaintiffs, and those similarly situated, demand judgment against Defendant, PLIC:

a) Prohibiting PLIC from reducing dividends that would otherwise be declared for Closed Block policyholders so as to benefit the stockholders of PLIC, its Parent company, The Phoenix Companies, Inc., or any other firm or class of stockholder; and

b) Compelling PLIC to allocate dividends in a fair and equitable manner and in conformance with the requirements set forth in the Information Booklets.

**COUNT III**

**CLAIM FOR NEGLIGENCE AGAINST PHOENIX LIFE INSURANCE COMPANY**

1. Plaintiffs incorporate, as if fully repeated herein, all of the preceding paragraphs of this Complaint.

2. Defendant, PLIC, failed to exercise due care in its management and investment of assets in the Closed Block.

3. Defendant, PLIC, owed a duty to Plaintiffs and those similarly situated to exercise due care in its retention, management and investment of the assets in the Closed Block.

4. It was foreseeable to Defendant, PLIC, that, if it failed to exercise due care in the retention, management and investment of assets in the Closed Block, Plaintiffs and those similarly situated would be injured.

5. As a result of the failure of PLIC to exercise due care, Plaintiff and those similarly situated were injured.

WHEREFORE, Plaintiffs and those similarly situated, demand judgment against Defendant, PLIC, for:

a. Compensatory damages;

b. Interest;

c. Attorneys' fees and costs of suit; and

d. Such other and further relief as the Court deems e equitable, just or proper.

**COUNT IV**

**CLAIM FOR VIOLATION OF THE NEW YORK CONSUMER PROTECTION LAW AGAINST PHOENIX LIFE INSURANCE COMPANY AND THE PHOENIX COMPANIES, INC.**

1. Plaintiffs incorporate, as if fully repeated herein, all of the preceding paragraphs of this Complaint.

2. Defendants, PLIC and Phoenix Companies, Inc., engaged in deceptive and misleading commercial acts and practices

declared unlawful under the New York Consumer Protection Law, McKinney's General Business Law §349 in their:

a. determination, allocation and distribution of dividends to Closed Block policyholders;

b. diversion of Closed Block revenue from policyholders to themselves and their stockholders; and

c. communications with Phoenix Mutual policyholders, wherein the Defendants sought to induce the policyholders to vote to approve the demutualization, as such was necessary to secure governmental authorization to demutualize.

3. The Defendants' acts and practices were materially deceptive and misleading to the reasonable consumer.

4. Plaintiffs and those similarly situated are, and at all relevant times have been, consumers of PLIC's life insurance products.

5. As a result of the Defendants' materially misleading and deceptive consumer-oriented acts and practices, the Plaintiffs, and those similarly situated, suffered economic loss in the form of reduced policyholder dividends.

WHEREFORE, Plaintiffs and those similarly situated, demand judgment against Defendants for:

a. Compensatory damages and punitive damages;

b. Interest;

c. Attorneys' fees and costs of suit; and

d. Such other and further relief as the Court deems equitable, just or proper; and

Plaintiffs, and those similarly situated, demand judgment against Defendant, PLIC:

a) Compelling PLIC to adopt investment policies consistent with the requirements set forth in the Information Booklet; and

b) Compelling PLIC to allocate dividends in a fair and equitable manner.

**COUNT V**

**CLAIM FOR UNJUST ENRICHMENT AGAINST PHOENIX LIFE INSURANCE COMPANY AND THE PHOENIX COMPANIES, INC.**

1. Plaintiffs incorporate, as if fully repeated herein, all of the preceding paragraphs of this Complaint.

2. Defendant, PLIC, decreased Closed Block policyholder dividends, which it recognized as its own financial gain under the company's Statutory Gain from Operations.

3. PLIC enriched itself at the expense of Plaintiffs and those similarly situated, whom were denied policyholder dividends from revenues on assets within and/or supporting the Closed Block, of which they were the rightful owners.

4.     PLIC used this gain to increase stockholder dividends paid to its Parent company, Defendant, The Phoenix Companies, Inc.

5.     Defendant, The Phoenix Companies, Inc., was enriched through the receipt of these excess stockholder dividends.

6.     Phoenix Companies, Inc., was enriched at the expense of Plaintiffs and those similarly situated, whom were denied policyholder dividends from revenues on assets within and/or supporting the Closed Block, of which they were the rightful owners.

7.     Equity and good conscience require Defendants, PLIC and The Phoenix Companies, Inc., to return said monetary gains to the Plaintiffs and those similarly situated.

WHEREFORE, Plaintiffs and those similarly situated, demand judgment against Defendants, PLIC and The Phoenix Companies, Inc., for:

        a.     Compensatory damages;

        b.     Restitution damages;

        c.     Interest;

        d.     Attorney fees and costs of suit; and

        e.     Such other and further relief as the Court deems equitable, just or proper.

**JURY DEMAND**

Plaintiffs here by demand a trial by jury.

**DESIGNATION OF TRIAL COUNSEL**

Pursuant to R. 4:25-4, Moshe Maimon, Esquire is hereby designated as trial counsel in this matter.

**CERTIFICATION**

Pursuant to R. 4:5-1, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated.

I further certify that I know of no other party who should be joined in the action at this time.

I further certify that confidential personal identifiers have been redacted and that subsequent submissions will not contain such identifiers.

Szaferman, Lakind,
Blumstein & Blader, P.C.
Attorney for Plaintiffs

Arnold C. L

By: Arnold C. Lakind, Esq.

Dated: October 30, 2009

526906.5