NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN S. SHEVLIN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>PHOENIX LIFE INSURANCE COMPANY, et al.,<br><br>    Defendants. | CIVIL ACTION NO. 09-6323 (MLC)<br><br>**MEMORANDUM OPINION** |

**COOPER, District Judge**

    Defendants, Phoenix Life Insurance Company ("PLIC") and The Phoenix Companies, Inc. ("PNX"), move for reconsideration (dkt. entry no. 176, Mot. for Reconsideration; dkt. entry no. 176-1 Defs. Br. for Reconsideration) and for leave to appeal (dkt. entry no. 177, Mot. for Certification; dkt. entry no. 177-1, Defs. Br. for Certification). Having considered defendants' arguments, the Court will deny each motion.

## I.   BACKGROUND

    The background of this case is detailed in this Court's Memorandum Opinion entered July 1, 2014. (See dkt. entry no. 174, Mem. Op. at 1–12.) As a part of that July 1, 2014 Memorandum Opinion, this Court denied defendants' motion for summary judgment as genuine disputes of material fact existed to preclude the entry of summary judgment in their favor. (See id. at 39; dkt. entry no. 175, Order.)

## II. DISCUSSION

### A. Motion for Reconsideration

Defendants move for reconsideration pursuant to Federal Rule of Civil Procedure 60(b)(1) and Local Civil Rule 7.1(i).  (See Defs. Br. for Reconsideration at 1.)  Local Civil Rule 7.1 permits the moving party to file a motion for reconsideration "within 14 days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge."  L.Civ.R. 7.1(i).  This Court entered the Order denying defendants' motion for summary judgment on July 1, 2014.  (See Mem. Op.; Order.)  Defendants moved for reconsideration on July 15, 2014.  (See Mot. for Reconsideration.)  Accordingly, defendants timely moved for reconsideration.

#### 1. Legal Standards

A motion for reconsideration is "an extremely limited procedural vehicle" granted sparingly.  Tehan v. Disability Mgmt. Servs., Inc., 111 F.Supp.2d 542, 549 (D.N.J. Sept. 7, 2000) (citation and quotation omitted); see Cataldo v. Moses, 361 F.Supp.2d 420, 433 (D.N.J. 2004).  A court may grant a motion for reconsideration when the movant shows at least one of the following: (1) an intervening change in controlling law; (2) the availability of new evidence that was previously unavailable; or (3) it is necessary to correct a clear error of law or fact, or to prevent manifest injustice.  See Tehan, 111 F.Supp.2d at 549; Cataldo, 361 F.Supp.2d at 432–33.  Reconsideration is not warranted, however, where: (1) the movant merely recapitulates the prior cases and arguments; or (2) the movant's apparent purpose is to express disagreement with the court's initial decision.  See Arista Records, Inc. v. Flea World, 356 F.Supp.2d 411, 416 (D.N.J. Jan. 27, 2005); Tehan, 111 F.Supp.2d at 549–50 (stating

"[m]otions for reconsideration will not be granted where a party simply asks the court to analyze the same facts and cases it had already considered in reaching its original decision"). Rather, the motion is reserved for situations where the court failed to consider facts or controlling legal authority, or the court needs to correct manifest errors of law or analyze newly-discovered evidence. Mauro v. N.J. Supreme Court, 238 Fed.Appx. 791, 793 (3d Cir. 2007); Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

### 2. Legal Standard Applied Here

Defendants move for reconsideration of two holdings from the Court's denial of their motion for summary judgment. (See Defs. Br. for Reconsideration at 1.) First, defendants ask the Court to reconsider what legal principles apply to PLIC's conduct. The Court held that, contrary to defendants' contention that corporate governance principles were most appropriate, breach of contract laws apply to the evaluation of PLIC's conduct as PLIC is a demutualized company. (See Mem. Op. at 15.) Second, defendants argue that the Court mishandled plaintiffs' unjust enrichment claim by denying summary judgment on that issue. (See Defs. Br. for Reconsideration at 2.)

The Court, having carefully reviewed defendants' motion for reconsideration, finds that defendants failed to establish that this Court overlooked facts or controlling legal authority. Rather, the majority of the motion papers filed in support of the motion reiterate facts and argument that the Court has already considered. (See id. at 6–7.) See Mauro, 238 Fed.Appx. at 793–94; Arista Records, Inc., 356 F.Supp.2d at 416; Tehan, 111 F.Supp.2d at 549.

3

### a. Breach of Contract Principles vs. Corporate Governance Standards

Defendants claim that the Court overlooked explicit contractual language in the policyholder contract and the Information Booklet that gave the PLIC Board discretion in managing the Closed Block according to the Plan of Reorganization in holding that breach-of-contract principles applied to the evaluation of PLIC's conduct. (See Defs. Br. for Reconsideration at 7.) After reviewing defendants' arguments and the case law, the Court drew a distinction based on the status of PLIC: no longer was PLIC a mutual insurance company owned by policyholders, but a demutualized company where the shareholders acted as owners of the company. (See Mem. Op. at 13–16.) The Court concluded that the purpose of the Closed Block, which was imposed in the demutualization process, was to "protect the reasonable dividend expectations of the policyholders." (Id. at 16.) Thus, applying a discretionary standard to PLIC's conduct, thereby insulating the company's decisions from judicial review, would "erode" the purpose of the Closed Block. (See id.)

New York courts have further suggested that "a policyholder may be able to bring a claim against a demutualized insurance company for breach of contract." Case law indicated that "simply because PLIC has a Board of Directors does not mean that all of its conduct is subject to corporate governance principles." (Id. at 15.) Based on such findings, the Court concluded that "PLIC's conduct shall be judged by breach-of-contract principles." (Id.)

Defendants also argue that the Court should have applied Section 717 of the New York Business and Corporations Law, which offers protections for members of the Board of Directors of life insurance companies. (See Defs. Br. for Reconsideration at 9.) The Court, however, identified that New York insurance and corporate law indicates that a Board of

4

Directors does not insulate companies from scrutiny of their conduct. As the Court stated, "[t]his is especially true where [the company's] conduct in relation to its policyholders is governed by both the Plan and actuarial standards." (See Mem. Op. at 15.) Thus, the Court is not persuaded that the motion for reconsideration of these rulings should be granted.

Defendants have failed to show that the Court did not consider facts or authority or that the Court made a manifest error of law. Defendants present no new evidence or change in controlling law. Thus, the Court will deny the motion to reconsider its decision holding that breach-of-contract principles apply to PLIC's conduct.

### b. Unjust Enrichment Claim

Defendants further request reconsideration of the Court's denial of summary judgment on plaintiffs' unjust enrichment claim for three reasons: (1) plaintiffs verbally withdrew their unjust enrichment claim at oral argument on the summary judgment motion and declined the Court's invitation to reinstate it; (2) the Court did not address case law holding that claims against non-signatories to a contract must be dismissed when the terms of the contract govern the subject matter of the claim; and (3) the Court overlooked case law stating that a plaintiff must have an interest in the property that a defendant is alleged to have received in order for an unjust enrichment claim to lie. (See Defs. Br. for Reconsideration at 2.)

Defendants are correct that in the midst of oral argument, without client consultation, plaintiffs' counsel verbally expressed an intent to abandon the unjust enrichment claim. (See dkt. entry no. 171, Summ. J. Tr. at 103:7–16.) The Court, however, recognizing the lack of client consent to the decision, granted leave to plaintiffs' counsel during a phone conference to confer with the clients before making the decision to formally withdraw the claim. Plaintiffs

5

never formally withdrew their unjust enrichment claim. As such, the Court issued its summary judgment opinion and denied summary judgment as to that claim. (See Mem. Op. at 38.)

Defendants argue that the Court failed to consider New York law holding that non-signatories to a contract cannot be held liable for unjust enrichment when the terms of the contract govern the dispute. (See Defs. Br. for Reconsideration at 12–13.) The Court, however, considered that exact fact when denying summary judgment:

> Defendants argue that Plaintiffs' unjust enrichment claim is precluded by the existence of a contract regarding the same subject matter. However, that presumes that a contract exists between the parties in question. Plaintiffs have a contractual relationship with PLIC based upon their life insurance policies. But Plaintiffs are not in privity of contract with PNX, the corporate parent that Plaintiffs allege received excess and undue enrichment as a result of PLIC's dividend actions. Therefore, while a breach-of-contract claim may be the appropriate vehicle to recover damages from PLIC, it is not the appropriate vehicle for Plaintiffs' claims against PNX, and Plaintiffs' claims against PNX are not precluded by Plaintiffs' contractual relationship with PLIC.

(See Mem. Op. at 38 (citations omitted) (emphasis added).) The Court will not revisit defendants' argument based merely upon defendants' disagreement with the Court's ruling.

Defendants' final argument centers on whether an unjust enrichment claim can lie where plaintiffs do not have an interest in the funds used to pay PNX, the parent company of PLIC. (See Defs. Br. for Reconsideration at 13–14.) In order to state a prima facie case of unjust enrichment under New York law, plaintiffs must prove that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Howe v. Bank of N.Y. Mellon, 783 F.Supp.2d 466, 485 (S.D.N.Y. Mar. 4, 2011). Plaintiffs correctly adduce that unjust enrichment claims in New York do not require the diverted assets to be ones that the

plaintiff owns. (See dkt. entry no. 180, Pls. Opp'n Br. for Reconsideration at 11–12.) The United States Court of Appeals for the Second Circuit has confirmed this to be the case: "New York courts have found that a defendant may be liable for unjust enrichment even though the plaintiff technically did not have legal title to the misappropriated property." Dover Ltd. v. Morrow, 534 Fed.Appx. 29, 30 (2d Cir. 2013). Further, the Court previously stated that while plaintiffs may not have had title to the dividend payments, "there is a relationship between the decreased dividends to Closed Block policyholders and the increased dividends to PNX" as the dividend payments were intended "to support the Closed Block." (Mem. Op. at 1 n.10.) Thus, it follows that plaintiffs possess an interest in the preservation of the residual assets. Accordingly, the Court will deny the defendants' motion for reconsideration as to the unjust enrichment claims as it fails to meet the standards for such a motion.

## B.     Motion for Interlocutory Appeal

Defendants also move, in the alternative, for certification of the Court's Order and Memorandum Opinion denying defendants' motion for summary judgment. (See Defs. Br. for Certification at 1.) Plaintiffs oppose the motion. (See dkt. entry no. 179, Pls. Opp'n Br. for Certification.)

### 1. Legal Standards – Section 1292(b)

Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise
> appealable under this section, shall be of the opinion that such order
> involves a controlling question of law as to which there is substantial
> ground for difference of opinion and that an immediate appeal from the
> order may materially advance the ultimate termination of the litigation, he
> shall so state in writing in such order. The Court of Appeals which would
> have jurisdiction of an appeal of such action may thereupon, in its

> discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order . . . .

28 U.S.C. § 1292(b). Thus, to merit a Section 1292(b) certification, the moving party must show that within the Court's order there is (1) a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal will materially advance the ultimate termination of the litigation. Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir. 1974); Kapossy v. McGraw-Hill, Inc., 942 F.Supp. 996, 1001 (D.N.J. 1996); see Premick v. Dick's Sporting Goods, Inc., No. 06-530, 2007 U.S. Dist. LEXIS 11813, at *2 (W.D. Pa. Feb. 20, 2007). The party moving for certification bears the burden of demonstrating that all three of the statutory prerequisites are met. See N.V.E., Inc. v. Palmeroni, No. 06-5455, 2012 WL 2020242, at *4 (D.N.J. June 5, 2012); Litgo N.J., Inc. v. Martin, No. 06-2891, 2011 WL 1134676, at *2 (D.N.J. Mar. 25, 2011).

The decision to grant certification "is wholly within the discretion of the courts," even if all three criteria are present. Bachowski v. Usery, 545 F.2d 363, 368 (3d Cir. 1976) (citation omitted). Section 1292(b) certification should be used "only in exceptional cases" since it is "a deviation from the ordinary policy of avoiding piecemeal appellate review of trial court decisions which do not terminate the litigation." Kapossy, 942 F.Supp. at 1001 (quotation omitted) (citing United States v. Hollywood Motor Car Co., 458 U.S. 263, 265 (1982)).

Section 1292(b) is intended "to permit decision of legal issues as to which there is considerable question without requiring the parties first to participate in a trial that may be unnecessary." P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 161 F.Supp.2d 355, 358 (D.N.J. 2001) (quotation and citation omitted). Also, the policies furthered by Section 1292(b)

include "the avoidance of harm to a party pendente lite from a possibly erroneous interlocutory order and the avoidance of possibly wasted trial time and litigation expense." Katz, 496 F.2d at 756. The statute is not intended, however, "to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation." Milbert v. Bison Labs., 260 F.2d 431, 433 (3d Cir. 1958). Further, Section 1292(b) "should not be granted merely because a party disagrees with the rulings of the district judge," but instead there must be genuine doubt about the correct legal standard. Kapossy, 942 F.Supp. at 1001.

### a. Controlling Question of Law

A controlling question of law, for purposes of Section 1292(b), is "every order which, if erroneous, would be reversible error on final appeal." Katz, 496 F.2d at 755; see P. Schoenfeld Asset Mgmt., 161 F.Supp.2d at 358. It is not required that reversal of the order terminate the litigation or that the order be on the claim's merits. Katz, 496 F.2d at 755. "Controlling" means "serious to the conduct of the litigation, either practically or legally." Id. From the practical standpoint, saving the district court's time and the litigants' expenses is "a highly relevant factor." Id. Orders that involve an exercise of discretion may also be considered a controlling question of law if it "truly implicates the policies favoring interlocutory appeal." Id. at 756. Thus, a district court should be guided "by a practical application of those policies, not by a mechanical application of labels such as 'discretionary' and 'nondiscretionary.'" Id.

### b. Substantial Ground for Difference of Opinion

A difference of opinion, the second Section 1292(b) factor, "must arise out of genuine doubt as to the correct legal standard." P. Schoenfeld Asset Mgmt., 161 F.Supp.2d at 360; Kapossy, 942 F.Supp. at 1001. "Such doubt can stem from conflicting precedent, the absence

9

Case 3:09-cv-06323-MLC-TJB   Document 185   Filed 01/23/15   Page 10 of 13 PageID: 9708

of controlling law on a particular issues, or novel and complex issues of statutory interpretation." Litgo, 2011 WL 1134676, at *3; see N.J., Dep't of Treasury v. Fuld, No. 09-1629, 2009 WL 2905432, at *2 (D.N.J. Sept. 8, 2009).  The moving party's mere disagreement with the district court's ruling, however, is not a substantial ground for difference of opinion for Section 1292(b) purposes.  Kapossy, 942 F.Supp. at 1001; Hulmes v. Honda Motor Co., Ltd., 936 F.Supp. 195, 208 (D.N.J. 1996), aff'd, 141 F.3d 1154 (3d Cir. 1998).

### c. Materially Advance Termination of Litigation

A Section 1292(b) certification materially advances the litigation's ultimate termination where the interlocutory appeal will eliminate the need for trial, complex issues, or issues that make discovery more difficult and more expensive.  See L.R. v. Manheim Twp. Sch. Dist., 540 F.Supp.2d 603, 613 (E.D. Pa. 2008).  A critical factor is whether the interlocutory appeal will cause excessive delay.  See Hulmes, 936 F.Supp. at 212 (noting that "[d]elay is a particularly strong ground for denying appeal if certification is sought from a ruling made shortly before trial" (quotation and citation omitted)).  Certification is more likely to materially advance the litigation where the appeal occurs early in the litigation, before extensive discovery has taken place and a trial date has been set.  See Kapossy, 942 F.Supp. at 1004 (emphasizing that excessive delay is less likely where the certification question arises "early in the procedural history of the case" and concluding certification would cause excessive delay where the court concluded discovery, decided in limine motions, and scheduled trial).  Further, the classic situation for certification is one that the court of appeals "can decide quickly and cleanly without having to study the record." Ahrenholz v. Bd. of Trs. of Univ. of Ill., 219 F.3d 674, 676–77 (7th Cir. 2000).

10

### 2. Legal Standards Applied Here

Defendants request certification of two specific issues:

1. In assessing Plaintiffs' breach of contract claim, did the District Court apply an incorrect standard in evaluating the decision of the Board of Directors of [PLIC] to reduce the dividend scale in managing a Closed Block of business created pursuant to a Plan of Demutualization that was approved in accordance with New York law?

2. Was it error for the District Court to hold that Plaintiffs' unjust enrichment claim against [PNX], a non-signatory to the contract, is not precluded by Plaintiffs' contractual relationship with PLIC, where the terms of the contract expressly cover the same subject matter raised in the claim?

(Defs. Br. for Certification at 3.) Defendants argue that both questions meet the three requirements for certifying issues for interlocutory appellate review.

#### a. Controlling Question of Law

The Court agrees with defendants that both questions are serious to the conduct of the litigation. As defendants state, plaintiffs only have two remaining claims against defendants: (1) a breach-of-contract claim against PLIC; and (2) an unjust enrichment claim against PNX. A ruling by the Court that a deferential corporate governance standard applied to PLIC's conduct would both practically and legally affect the Court's evaluation of PLIC's conduct. Further, had the Court ruled that plaintiffs' unjust enrichment claim against PNX was barred, that claim would be terminated. Thus, defendants met their burden in establishing that both questions qualify as controlling questions of law. Katz, 496 F.2d at 755.

#### b. Substantial Ground for Difference of Opinion

Defendants, in arguing that corporate governance principles should apply to PLIC's conduct, fail to appreciate the distinction that the Court drew between mutual and

11

demutualized companies.  The Court discussed this distinction and its resulting consequences at length in its Memorandum Opinion and the preceding sections of this Opinion.  (See Mem. Op. at 13–16; supra Section II.A.2.a.)  The Court has explained the significance of PLIC's status as a demutualized company as shareholders replace policyholders as owners of the company.  The New York law that defendants continually point to applies only to mutual insurance companies.  The Court will not rehash the distinction defendants fail to appreciate in making an argument applicable only to mutual insurance companies.  As such, defendants fail to demonstrate that substantial ground for difference of opinion on applicable legal principles exists as to the first question.

Defendants continue to twist the Court's analysis of plaintiffs' unjust enrichment claim.  As the Court discussed in its Memorandum Opinion and above, while PLIC had a contract with plaintiffs for their life insurance policies, it is not at all clear whether plaintiffs had a contract with PNX, PLIC's corporate parent.  (See Mem. Op. at 38–39; supra Section II.A.2.b.)  Further, plaintiffs are not in privity of contract with PNX.  (Id.)  The Court will not continue to explain why then defendants' case law, while correct, does not apply to bar plaintiffs' unjust enrichment claim.  For this reason, defendants fail to establish that there exists a substantial ground for difference of opinion as to this question.

### c. Materially Advance the Termination of the Litigation

Granting certification of the first issue posed by defendants will not materially advance the termination of the litigation.  Even if it were to be decided on appeal that a different standard applied to PLIC's conduct, it would not render the breach-of-contract claim terminated or moot.  Further, the first question posed is one of state law—such issues are not

typically certified for interlocutory appeal. Even if defendants were to ask it be directed to the New York Court of Appeals, as they claim they would do, it would cause excessive delay in resolving this case and it would not eliminate the need for discovery or trial.

Certification of the second issue would similarly fail to materially advance the termination of the litigation. While reversal of the Court's Order entered July 1, 2014, would terminate the unjust enrichment claim, it would not end this case. Given the factual complexities involved in this case and that the claims are entwined, certifying question two would not materially advance termination of the litigation. As such, defendants' motion to certify the two issues stated above will be denied.

## CONCLUSION

For the reasons stated, the Court will deny defendants' motion for reconsideration and motion for interlocutory appeal. The Court will issue an appropriate order.

      s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated: January 23, 2015